Chief Judge Howard, may it please the court, I'm Michael Luskin for the Oversight Board. The appellants are dividing their presentation in three. I'm going to cover the unitary action and litigation stay points. Mr. Karpulani for the Senior Cafina. Bondholders will deal with section 405B3, attempts to exercise control over property. And Mr. Dunn for AMBAC will cover section 405B6, attempts to collect or assess claims. And clearly we can all answer whatever questions the court may have. We would like to reserve one minute collectively for rebuttal. Yes. Thank you. Our first point is that the promisa stay applies to all of the claims in the action or proceeding. There can be no cherry picking of which claims are not, no matter how they are pled. That is the plain reading of the statute that's consistent with the stay's purpose. It's consistent with Judge DeSos' own decision in the Brigade case back in November where he wrote that all stakeholders, including the Oversight Board, collectively deserve the chance to avoid this piecemeal approach to resolving Puerto Rico's fiscal emergency. The two cases that the judge relied on and that the police cite actually do not support what they say. Maritime Electric, the Third Circuit, face the issue of whether the stay applied to all claims against the debtor and held that they do not apply to claims by the debtor against others. That is when the debtor is using the statutory condition. Excuse me? Isn't that just a function of the statutory condition? One of the conditions is that the action be against the debtor. So if it's not, it doesn't. But another condition is that it arrives at a certain time. So if it doesn't, why wouldn't it be the exact same analysis just textually? Well, I think that that brings up the issue of whether you need to parse the pleading itself. And I think that when you do that, you see that the... No, what I'm saying is if you have a single proceeding in which there are some actions against the debtor, some claims against the debtor, some claims not against the debtor, that proceeding can be split because the text has a condition. So now we have a proceeding and there's a condition. It's not that condition. It's a different one. So why not the same analysis? Well, it's a different condition. I suppose the question is the claims you're thinking about the substantive request for relief. The different condition is the parties. And I think that is a significant difference. Why is it textually? That's what I'm trying to understand. The word is proceeding. The word is proceeding. So it's a proceeding in which you've got claims, some of which meet the condition, some of which arguably don't. Now, if the argument is it doesn't meet the condition, I understand the coincidence of that argument. But I'm having trouble actually seeing why we wouldn't get to that. I think that the natural interpretation of action or proceeding really is claims here against the parties. And you would look to see, you could have had, for instance, if the condition that we're talking about in Maritime Electric where you have debtors and non-debtors, you could have had two separate actions, one against the debtors and one by the debtor against the plaintiff. But you didn't. And that's why, isn't that the significance of the word proceeding? And why include the word proceeding if you're right? Well, Your Honor, I guess the answer there is, to go back to what I said, I think you have to parse through what really is meant by proceeding. And you've got the, in Maritime Electric, the court was able to look at debtor as defendant and debtor as plaintiff and separate that as two proceedings, essentially. And I think that that's really what we're talking about here. We're talking about claims that we're not talking about here. We have one party, essentially. We have parties that qualify. And I think you do have to decide whether or not it's one claim or one proceeding or multiple proceedings. I think that here, these claims are all grounded in the same issue. It's one set of claims. Can I ask you a question about that? Yes. What makes some of the claims ripe before the executive order? Others may not have ripened until after the executive order, which I take it was a day or so or the same day that PROMESA went into effect. Didn't they all ripen at the same time, which is when the executive order was issued? Well, I think that the claims all are premised on the same set of required findings and conclusions about the reach of the constitutional lien, the meaning of available revenues. So some of these claims could have been brought before the executive order was issued? Some of these claims could have been brought. And again, it brings me back to the point I was unsuccessfully trying to make with Judge Barron about the need to parse the complaint. The police say no, and the district court said no, just take it as pledged. But aren't you just now parsing how to read the condition? Which is fine, but it sounds like that's what you're doing. You're saying how to determine whether it arises after or before depends on whether it's grounded on some legal argument that could have been made before. Okay, yes, I am. But I think that it screams out at you here. So could all of the relief that's being sought have been requested prior to the issuance of the executive order? Yes. And would there have been as much reason to request it, I mean, given that you were being paid? Given that they were being paid? Because until they stopped payment on the general obligation bonds, there would have been less reason to seek the relief they're seeking now, isn't that true? I think that's true. I think there probably were defaults pre-enactment, but But if that is true, why doesn't that matter? Well, I think if, again, now we're going into the merits of the pleadings, which the others are better situated to talk to, but I think that if you read the pleadings, there are of estoppel and latches, that there were reasons to bring these things, that after 10 years of living with the statute and the statutory assignment of revenues and the payment of principal and interest, you are bound by it. I mean, that's what's raised in the pleadings. And I think that, you know, fundamentally, that's what's in issue today, is that all of these claims really require the same proof, the same conclusions with respect to the constitutional issues, the meaning of available revenue, and that to stay nine of 13 claims and allow four to go to trial, where the proof, the evidence, the findings, the conclusions on those four will be identical and could be preclusive with respect to the other nine. I'd like to direct your attention to a different topic. We've heard your argument on your main topic. Yes. So this is the second of these cases we have. Are there any more in the pipeline that involve different claims or that are likely, to your knowledge, to be brought before May 1? To my knowledge, none. When the court asked me that question in the Piaget case in January, I answered it, yes, one. Turned out to be this one. But as I stand here today, there are other cases pending, but none is being litigated. None is teed up. They're all awaiting the decision in this case? I think that or, more importantly, they're negotiating with the Oversight Board and the As the negotiations are, in fact, going on? Yes. As to that, does the Board have a position with respect to the, quote, unquote, court annexed mediation issue that you wish to share with us? The Board's view is that private mediation is appropriate if the parties are consenting to it. It appears that that process is underway. I'm not in a position to say whether all parties have signed on or not. I believe that it's scheduled to begin in New York next week. But, again, I do not know the scope of the participation. I can tell you to answer or to elaborate on my answer to Judge Lynch's question is that the parties have been meeting without mediators. I mean, the parties have been meeting face to face for some time. I mean, with varying degrees or lack of success on that. Thank you, counsel. If I can turn to the motion for the litigation to stay or you have a question, Judge Howard? I think we're going to move on to your co-counsel. Oh, am I done with time? I'm sorry. I see the red light. I wasn't looking. We're a generous court. Thank you. Sometimes. Good morning. May it please the court. Sushil Kirpalani of Quinn Emanuel Urquhart & Sullivan on behalf of Appellants, the Cofina Senior Bondholders. Chief Judge Howard, Judge Lynch, Judge Barron, I represent over $2 billion of senior lien bondholders of a territorial called Cofina. My bondholders have a statutory lien on Cofina's property, which is the dedicated sales tax that is owned by Cofina pursuant to Puerto Rico statute. By statute, the dedicated sales tax is owned by this entity. It's collected daily. It is sent to a Cofina bank account, and then it is from there sent to the Bank of New York Mellon, which is a bondholder trust account. I'm going to focus on why plaintiff's complaint violates section 405B3, which is an act to exercise control over property. In section 405, Congress imposed a stay on all creditor litigation against certain protected entities that are at the heart of Puerto Rico's financial crisis. And Congress told us its Article 5M says, Congress finds in subparagraph 5 that an immediate but temporary stay is essential. And what is it essential for? It will ensure that all creditors, such as my clients, have a fair opportunity to consensually renegotiate the terms of their debt free from litigation distraction. This is the explicit will of Congress pursuant to the territories clause of the U.S. Constitution. From the time the Oversight Board was appointed by President Obama on August 31, 2016, up until May 1, which is just two and a half, three and a half weeks left in the stay, creditors of Puerto Rico were supposed to put down their litigation arsenal while the Oversight Board got its bearings and could negotiate voluntary agreements with creditors. Well, that's true with respect to the specific things set forth in the statute, one of which is whether it's an act of control. So why is this an act of control? Your Honor, it's a plain, Judge Barron, the plain text of exercise control over property, we respectfully refer this court to the Seventh Circuit's decision in, it's Thompson against GMAC. In that decision, the court held that the repossession of a car, possession itself, is an exercise of control. And here, and this is a point that was lost completely at the district court level, the defined term of who are the protected entities, it goes a bit to your prior question to my colleague, who is protected by the stay? The defined term that Congress chose is called the government of Puerto Rico, but the government of Puerto Rico actually includes not just the Commonwealth government, but also each public corporation and territorial instrumentality in Puerto Rico. So COFINA is a separate protected entity by the Section 405 stay, and the relief that's being sought is injunctive and declaratory relief. And let me just go through the three things that they're asking for. First, they want to rip all of the property out of COFINA, which is a protected entity, for, ask the court to force COFINA against its will to shift that property and transfer it to a new account established at their bond issuer, which is the Commonwealth entity, to freeze the money there. Even that government can't use it. And then to hold it until the litigation or their rights are determined and their priorities are finally determined that they are actually first in line to whatever the Commonwealth decides to do. Is there another revenue stream that could pay, other than SUT, that could pay the COFINA bond holders? No, Your Honor. So we are a non-recourse entity. It's called a securitization in finance world. The whole point of the statute, which was from 2006, is even at that time, the General Fund of Puerto Rico was in a state of crisis, and the government had shut down for two weeks. So the only way to reaccess the capital markets, may I continue? Yes. The only way to reaccess the capital markets was to insulate creditors from all of the Commonwealth General Fund risk by creating a securitization, which just has a certain stream of sales taxes, 2.75% of the whole sales tax, would go into this box. That box would be preserved with a lien for a fresh new batch of bond holders, and there are over $15 billion of COFINA bond holders. And that lien is preserved, and we don't have recourse. The benefit of the bargain is we also can't sue the Commonwealth. Our assets are separate. If there's an injunction, a freezing of this particular revenue stream, will there be a default then with respect to the COFINA bond holders, because you're saying there's no other revenue stream? Absolutely. Absolutely. And COFINA today is the only bond issuer on Ireland that is not in payment default. This is probably why the GO bond holders are upset about that. Can you just explain to me how, I understand what you're saying about the sum of the relief, maybe all of it, but could you explain how a declaration that the executive order is unlawful is an act of control? No, that wouldn't be an act of control, Judge Barron.  There is a count. It was count one. Count one of their complaint was the one that simply said the executive order is preempted by PROMESA. We didn't intervene at that time, because that act, preemption, which is contemplated by section 3033 of the statute, is perfectly appropriate to go forward. But what flows from preemption? It's just the invalidation of Governor Padilla's unlawful executive order, right? And so everyone is restored to where they were before, and everyone has stayed from bringing these actions that could have been brought for years before the PROMESA statute. But by getting a wedge in the door from count one, what the GO bond holders have done, they said we're going to open the floodgates with that, and we're going to just bring all of our claims about the constitutionality. I just don't understand the significance of what you're saying. Are you saying that insofar as right now, before us in this proceeding, is a request for a declaration that the executive order is unlawful, that stayed only because of the provision that the first person who spoke to us was talking about, and not because of an act of control? Well, a declaration that the executive order is preempted is not an act of control. It's not an act of control. It is still, because in order to get there... So the only way that would be stated is if we conclude that it's something that arose only after, or because it's, you can't go claim by claim? No, no, no. No, you're wrong. It's also an act to recover a claim against the commonwealth government, which is under B6. Even just a declaration? Even a declaration. And the reason is straightforward. They are creditors of the commonwealth. The only privity they have is with the commonwealth government. But they're not satisfied with those assets. So what the Second Circuit held in Colonial Realty is that when a creditor is seeking not just to recover what's in their debtor's hands, but also a declaration of what's in somebody else's hands, which is Cofina here, should be returned to my debtor so that I could collect. That's an act to collect on a claim, or collect or recover on a claim. That's barred by B6. Is that possible to see that as an act to enforce a lien also, or not? Well, we don't. It could be if they had a lien. They've alleged they have a lien, and they have a lot of good strategic reasons why they're doing that. We dispute that they have any lien. They are an unsecured creditor. All of their documents say that, and that's why they charge a lot higher interest rates to the government of Puerto Rico. Lien creditors are clearly stated. Property rights are clearly provided. I'm sorry. The way to think about that provision is whether they actually have a lien, not just whether they're purporting to enforce a lien. That's what I would say, Your Honor, yes. And I understand the argument that the Oversight Board has made in its papers. We chose not to make that, that if you take their complaint at face value, that they do have a lien per the Constitution. Well, then what they're doing must be trying to perfect it or enforce it. I could see that argument, but since we don't, if we don't admit or exceed or suggest that they would have a lien, given how clear their bond documents are that they don't, we didn't think the need to intervene on that basis. We'd better hear from Mr. Dunn. Thank you very much, Your Honors. May it please the Court. Dennis Dunn from Milbank Tweed, Hadley & McCloy on behalf of Appellant Amback Assurance Corporation. I'm going to go off script, if you will, and try to address the comments and questions that have come out of the panel, but focus on what I was assigned, which is exactly where we left off with Mr. Kerpelani, which is Section 405B6 of PROMESA, which states any act to collect, assess, or recover a liability claim against the government of Puerto Rico. And government of Puerto Rico is defined both as the Commonwealth and as COFINA. So let me pose this hypothetical. Let's assume I was in personal bankruptcy, and my mortgagee, my bank, decided to litigate, to segregate, freeze some income stream, whether it's my wages or I have a bond fund at Fidelity and it spins off some interest payments. And they're not doing that through the bankruptcy court. They're doing that separately in state court. And I then sue them for breaching the automatic stay in bankruptcy court. But their response is, I didn't seek to compel payment in the litigation. What I sought to do was redirect certain income streams, hive them off, freeze them, and separate them. I posit there's not a bankruptcy case out there that would say that's not a violation of the to exercise control or collect on a debt. Why? Ingray Tribunal is a good example. It's a recent Texas bankruptcy court case that said even eventual or planned collection can violate the stay when you have stopped right on the precipice of saying, I'm doing everything to maximize the chance that I have a pile of cash over here at which I can seek to impose a lien. That's what they're arguing. Argue that I have property rights to and re-divert it from you. There's no magic shibboleth here. There's no magic incantation that they can utter that changes that. Their words are belied by their deeds. Is that equally true of a request for a declaration that the reason given for non-payment is unlawful? I believe so, Your Honor. Is there some authority for that? Because I understand that as to the segregating the funds, preserving it, all that kind of thing without actually collecting on it. But this is one step prior to that, which is just they've given a reason for non-payment and the party would like it announced that it's unlawful for that to be the reason for non-payment. And let me answer that two ways. One is, I do believe that that would, a declaratory judgment in my hypothetical, the bank going in saying, I want to just get a judgment that those revenues should be diverted but not actually do it. I think under the tribunal and other cases, that would be prohibited. But let's more importantly look at the complaints. If you look at the Request for Relief 1F1, it says to prohibit the deposit of any sales and use taxes with Gofina. Request for Relief 1F2 is require the sales and use tax revenues to be transferred directly to a common wealth account. Request for Relief 1F3 requires the sales and use tax revenues to be segregated and preserved. That's much, much beyond just seeking a declaratory judgment. Those are seeking actions. But don't they also seek a declaratory judgment? Yes, they do both. So I'm just focused on that one. OK. Because that would still require some litigation over this issue. So I'm trying to figure out why that issue can't be litigated. Well, through the mechanism of the Seeking a Declaratory Relief, there may be an answer. I'm just trying to figure out what the answer is. Is it because that itself would be an act to recover? Yes. The short answer is yes, because that's a precursor to establishing a win for them on the payment of their debt. If you kind of separate what the actions could be, I could just get a court to agree with me that my worldview is correct. If I do that, I am several steps closer to collecting on my claim. And I believe that all of that arc is prohibited when you kind of go through the cases and we've set them out on the brief. One last point on the question that you raised, Jeff Merrill, on Executive Order 30. We don't believe that implicates COFINA at all, because COFINA was hived out of Executive Order 30. Let's assume they prevailed and said Executive Order 30 was preempted by PROVISA. Fine. That doesn't mean payments are not made to COFINA. It doesn't mean that things get redirected. Not at all. But you want to stay even that litigation. Just to be clear, you're now making an argument how you would win on the merits or you don't care if you lost on the merits. But I thought the idea here was you don't want anyone to talk about the merits because you're seeking to stay. Of the merits on COFINA, yes. But I think the question, if it is the Executive Order itself, which doesn't do anything with COFINA. It allows the ordinary courts to continue with respect to COFINA. Whether that was preempted by PROVISA, that doesn't touch COFINA. What they've done, and Mr. Karpulani talked about this, if we talked about the first iteration of their complaint that only addressed whether Executive Order 30 was preempted, we didn't intervene on that. What they did was they got greedy. They tried to bootstrap it and said this will be a great opportunity to fight what will be an issue potentially in one of these cases if we don't settle it out, the COFINA issues. And that's what's inappropriate. Thank you. May it please the Court, Mark Stansel for Appalese. I had a lot of ground to cover. I want to start, if I could, though, with a section that's received precious little mention. We've heard a lot about PROMESA's purpose. We've heard a lot about the purpose of 405. You've heard very little about another provision in PROMESA called 3033, which is the cause of action that's centrally at issue here. This is the provision of PROMESA that says that the Commonwealth may not, by Executive Order, reorder the priority of debt. We have alleged that that's exactly what happened here. And at the posture in which this case comes to the Court, I think we have to take that as true. We've never gotten a chance to prove the merits of that claim. So I think on this record, I think that has to be taken as true. For all of the talk about how this would never have happened in bankruptcy, this would never have happened in, this shouldn't have happened to allow negotiations to foster, no one can answer how it is that it is consistent with PROMESA's purpose to allow something that is specifically prohibited by the statute, under 3033, to go unremitied for 10 months, to the tune of potentially, with respect to Jyskofina, already $730 million and change. With respect to various other items in our complaint, it's hard to tell, but perhaps a billion, two billion more. No one has explained why Congress intended to stay, anybody from stopping unlawful diversion of funds. And I think that's crucial. So for all of the bankruptcy cases, I think none of them arise while trying to reconcile that statutory provision. 303 is a dead letter. 3033 in particular is a dead letter, under the appellant's reading of the state provisions. Because there's nothing to be done about it. They started to say, well maybe they could get a declaration, but then that's walked back 30 seconds later. We can do nothing apparently, even if there's something that blatantly violates 3033. Let me make one other contextual point, and then I'll get down into the weeds, if you don't mind. The 362 cases arise in a very different backdrop. In bankruptcy world, you go into bankruptcy court, and the 362 stay kicks in. Pro Mesa, we don't have that. We have what has now turned into a 10-month free-for-all. And there's no bankruptcy court to go to, even under the bankruptcy stay. You can go to the bankruptcy court, file an adversary proceeding, and rein in unlawful actions. The bankruptcy stay applies to actions outside of the bankruptcy court. And so for all these cases saying, well they won't let you go here, they won't let you go there, a bankruptcy court would never allow this. A bankruptcy court, whether it would or wouldn't, I'll get into those cases, whether it would allow you to go to another court, it's very different than what we have here, where there's no court to go to. I forget, can you seek relief from the automatic stay? Yes, Your Honor, we could. So isn't that an answer to at least part of what you're complaining about? Well, if the stay applies, but I think... If the stay applies, then we're not that different from bankruptcy court in the sense that if you'd like a relief from the stay, you have recourse, and you're trying to make a compelling argument that you would be entitled to a relief from the stay. But you're not seeking that, you're saying that the stay doesn't apply. Well, we did. We actually made both arguments, Your Honor. In our complaint, we said the stay doesn't apply, and if it does, we'd like relief from the stay to pursue that. I encourage you to ask my colleagues when they stand up on rebuttal, if they would agree that we are entitled to relief from the stay. I'm suspecting they'll say we are not. And let me tell you what the problem with that is. The board certified a fiscal plan a few weeks ago, and the fiscal plan provides a number, or at least this draft does, for debt service that I think by their admission is roughly a third to less than a third of what the total claims are. Now, we're the senior claimant. Mr. Kerpelani has a view that that is special and over to the side. We'll litigate that in due course, whether in this proceeding or in a Title III bankruptcy. But in any scenario, the oversight board has said publicly here's what we want to spend money on, here's what's left over for debt service. Sorry. Well, so relief from the stay matters a lot, or the inapplicability of the stay matters a lot, when the oversight board is not saying that there's another pile of resources that you can come after later. They've told us it's a zero-sum game and we come last. And respectfully, that just doesn't make a lot of sense. So when they come in and say we can't get relief from the stay, I'd like to see them square that with their position that you get the crumbs that are left over in terms of irreparable harm and the kinds of problems that we've had. Excuse me. I may have missed this in your papers, but what is the textual basis for your argument that 303 is an exception to the stay provisions? 3033. I think, Your Honor, the stay provisions have to be read to give effective evidence. What is the textual basis, please? 3033 says that an unlawful executive order that modifies creditorial rights is preempted. 405 gives certain kinds of actions that are prohibited. Where there is ambiguity or conflict between statutory provisions, courts have to try to give effect to all of the statutory provisions in a statute. So if I may, Your Honor, I'd like to turn to those. So it's this rule of construction as opposed to anything explicitly in the text of the statute. Yes, Your Honor. There's nothing in 3033 that says the stay doesn't apply to a 303X. That's correct. There is no such thing. And you're saying, well, nonetheless, we have to imply such a thing from our reading of the statute as a whole? Your Honor, I don't think it's necessary to imply anything. And with your permission, I'll turn to the provisions of 405 because I don't think they reach the claims here either. So with respect to the unitary theory, Your Honor, a couple of points. First of all, no one has addressed the Supreme Court's decision in Jones v. Bach which took the word action in the context of the PLSRA and said the ordinary meaning of action in this context is claim by claim adjudication. I think there's no reason to read action or proceeding differently here than to read the word action there as the Supreme Court did. In fact, I think there's a misunderstanding with respect to how courts have looked at the claim by claim versus which party is being sued or is doing the suing. The best example I can give is U.S. XRL Fullington v. Parkway Hospital. It's that Eastern District of New York case. That was a case where the government qualified for an exception to the automatic stay for certain government enforcement actions. And the court said, well, yes, that can go forward. Except with respect to the government's attempt to get monetary relief. And that wasn't who was being sued or who was suing. That was the nature of the relief sought was over the line of the stay. So that is a clear claim by claim sort of adjudication. And the same analysis would apply here. Secondly, Your Honor, with respect to whether this action could have been brought before the enactment of PROMESA. I want to make two main points. First of all, the cause of action did not exist until June 30, 2016 when PROMESA was enacted. I think it would be a sweeping expansion of the text in this case and then perhaps by application to other bankruptcy cases to say well, if a fact occurred prior to the moment in time and that fact would then be implicated by a subsequent cause of action that arises I think you would be opening Pandora's box to say that we're going to start looking at when these facts occurred or didn't occur. Second, and I cannot stress this enough. There are invitations, particularly in the Kofina briefs, there are invitations to say that we could have sued to stop this Kofina structure years before. That is an invitation for a backdoor ruling on the merits in a way that I just want to make very, very clear. We have seen, despite Mr. Kripalani's protestations that this litigation is burdensome and distracting, he rushed to file before this court issued its stay ruling, rushed to file his papers in the district court seeking a motion for judgment in which he made a lashes defense among other arguments like that. It would be a gross overreach, respectively, and wrong as a matter of law to suggest that this action could have been brought before the enactment of PROMESA. What he's trying to get is some indication from this court that our claim was ripe with respect to Kofina before June 30th. And that would be wrong not only because there's been no record made on this, this would be just a bare allegation, but secondly even in the standard, even if we were getting down into the merits, even in the standard anticipatory repudiation context, if somebody did something that repudiated your contract, you have the option under contract law to continue performing until they breach. So I just urge the court not to take the bait and say, which with respect would be taken later as an invitation or as some indication of the merits of their claim. I just want to challenge you on the characterization that there was a rush to get a judgment on the pleadings, weren't dispositive pleadings required to be filed within that time period? By Monday at midnight, yes, Your Honor. And I'd like to give the sequence if I may, and forgive me if it's a little foggy for the last couple of weeks. I believe Friday night I got an email from Mr. Kerpelani's counsel saying, we're going to move to say the district court proceedings. Saturday night I got the motion for judgment on the pleadings. Sunday, Monday they were actually due. So the oversight board didn't file anything because the say order was entered beforehand. And the commonwealth didn't file anything because the say order was entered beforehand. We did not file anything on a dispositive motion basis because the say order was entered beforehand. I see what you're saying. Mr. Kerpelani is a friend and I don't intend to impute his character in the slightest, but I think, call the motion a motion. With respect to an act to obtain possession or exercise control, the key word is control. It's not influence or it's not respecting. I want to make two principle arguments. First, I want to contrast B1 with B3. B1, it's sort of a maze to get through, but it says any act that could have been brought before PROMESA is stayed. Anything with respect to a liability. So that's the test that says anything pertaining to a bond claim that's stayed if it could have been brought before. But then there are a series of conditions for things that couldn't have been brought before that go through the actions that are or are not stayed. Control is not with respect to a liability. And what I'm hearing is anything that might influence or affect your ultimate adjudication of some future claim to money, well, that's got to be control or that's got to be an act to collect. And I just don't think that can be squared with the fact that the broad respecting the liability... What about those particular things that are being sought here? I mean, I take the point that not anything that could influence it in some indirect fashion, but here the relief sought is seeking to segregate funds, hold up certain funds, and to declare that a legal document that provides the basis for nonpayment is unlawful. Yes, why isn't that exercising control over the property given the precedent, at least in the lower courts, unless you think it's wrong, about what does count as an act of control? So let me take the... with respect to the Commonwealth's property first, and then I'll turn to with COFINA's property. With respect to the Commonwealth's property, we're not trying to control the property. We're trying to say there's one unlawful use that it cannot be put to. So, for example, if I'm walking through Washington by the White House grounds, there's a sign that says, you can't jump the fence and run up to the White House and knock on their door. The Secret Service is not controlling my conduct. They are forbidding one unlawful path that I may not take. They're not controlling me. I can walk anywhere else that I'd like. So I don't think the word control... You're literally controlling who they can pay. I'm not... Respectfully, Your Honor, I'm controlling who they cannot pay. And I think that's the difference in terms of control. If the distinction is you may not have... you may not overrule any unlawful recipient. If anything goes, then again, I come back to 3033 being a dead letter. And I just don't think that's what control means. And I'd like to give you an example. In the Sixth Circuit case, I think it's Dominic's Restaurant, they enjoined a debtor from operating their restaurant. And because he was doing so in a way that violated the trademark. That is control over property if you take it to the extent that any... you know, while you're trying to say anything they want to do with their property is forbidden. But that's not control. But if he said, if a debtor says I don't want to pay a creditor for the following reason and you seek a legal action saying that reason is not a good reason not to pay, I would have thought in general that would be the kind of thing that would be states or the Bankruptcy Court would decide. Is there any case suggesting that when you're trying to challenge directly a debtor's reason for non-payment that that's outside the stay in ordinary bankruptcy? I haven't seen a case that suggests that. Well, we're in an unusual circumstance because none of the bankruptcy cases apply just to bondholders. But I guess I would come back to I'm not sure why it would matter if I say you can enjoin a restaurant from operating, but you can't enjoin an unlawful disposition of assets. I'm not sure the both a property, right, both a revenue and... But one is about the use of property that's not about using it with respect to how the payment will be made. This is the only thing you're trying to restrain is the choice about whether to pay a creditor, which just seems directly at the core of what the whole scheme is about. Well, Your Honor, I don't think 405b3 distinguishes between property to creditors. Well, 405b3 does because it applies only to bondholders. That's special to Promesa. But if you're looking at the language under 362, it doesn't say creditor property, bondholder property, and it says property. And so I think it would I would say if you can enjoin somebody from running a business to make money, you ought to be able to enjoin somebody from making because that's unlawful. That's the basis. You ought to be able to enjoin somebody from another unlawful exercise. And this is like an ongoing constitutional violation. It's an ongoing tort. It happens to involve money. And we've heard a lot about negotiations and how essential they are. Respectfully, Your Honor, we've been trying to negotiate for months. I'm a little restrained in what I can say because I don't want to overstep letters that have exchanged. But I think it would be unfair to say that this litigation has prohibited anybody from negotiating anything. We have been trying to get the money turned off to unlawful purposes so that we can have a meaningful negotiation. Could you just address how it's not enforcing a lien given that you contend you have a lien? Yes, Your Honor. First of all, whether we have a lien is a separate merits question. We're not seeking to attach property. We're not seeking to execute on property. And that's what 405 B4 and B5 address. There's no particular relief that is sought that is peculiar to the lien that we have. It is if that were the case, it's just your status as a secured creditor, then, well, if you can enforce, if you have a property interest, then you can't get any relief. I think that would be not, that's not an act to create, perfect, or enforce a lien. That's an act by a lien holder. And that's the difference. I don't think it can be that just because you're a secured creditor, you're somehow worse off under the stay and can take no action in respect of your property. May I just... Yes. I will, and if you'll indulge me, I'll be brief. With respect to the remedy, if there is a particular form of our relief for the same reasons that the court would go claim by claim, the court should direct the district court to strike that relief or this relief, whatever it is that is offensive, because the oddity of their claim, of their theory that everything is all one unitary ball of wax, is it would just be repled. It would be wasteful. So send it back to the district court with instructions to, at a minimum, Your Honor, give the declaration as to the lawfulness. And I think that would be the most efficient and I guess precise way to proceed. If the court has no further questions? Yes. You made the choice to ask for a series of remedies. That strikes me as a different matter than the initial argument about action and claims. It was your choice to assert that you're entitled to all of those remedies and leave you only with the remedy of declaration. You seem to equate it with the first argument. I'm sorry,  Your Honor. I guess the simplest way to illustrate it is to say that the first argument to illustrate it is for the court to say this complaint has stayed and we won't carve anything out that has not stayed. We would turn around, we could turn around tomorrow and refile. No, we're not going to carve out a particular claim for relief when you are the one who pled all of those claims for relief. Yes, Your Honor. I was assuming the premise of that. We could turn around tomorrow and refile a new complaint without those claims for relief, Your Honor. That's not so clear. Okay. Very well, Your Honor. Thank you. Thank you, Mr. Toomey. May it please the court, Sushil Kirpalani, I'm going to deal with the one minute for rebuttal and I want to answer some questions that were asked if I have the chance. First and foremost, to answer Judge Lynch's question about the declaration, just to be very clear, the declaration itself violates B-6 because it is an act to assess, recover, or collect. It doesn't have to be all three. There was a bit of lack of clarity in the argument earlier. I'm glad to have that clarity now. The fault is mine. I apologize, Your Honor. Secondly, 303 is not a dead letter. I was heavily involved in the drafting and even testified before Congress when the statute was passed. It's not a dead letter. It's just simply not the vehicle for what the GO bondholders are asking for. And Judge Lynch, you asked about Section 303 and where is the text? The reason Mr. Stancil didn't tell you where the text is is because the second clause of Section 303 expressly prohibits the relief that they're requesting. If the governor had done, may I just finish that sentence, if the governor had done exactly what the plaintiffs here are requesting, it itself would have violated Section 303, subparagraph 3, the second clause. It says an unlawful executive order would be preempted if it, quote, diverts funds from one territorial instrumentality, that's the COFINA separate entity, to the territory. That's exactly what they're asking for. So that's the reason he didn't give you the textual response, Your Honor. Thank you.